Case number 25-7133. Artemus Eden v. Station Townhouses LLC and Bozulia Management Company, the felons. Mr. Duvian, for the felons. Mr. Zagreban, for the appellate. May it please the court. I'll address first the issue of diversity jurisdiction as we discussed in the supplement that I filed on November 26 because obviously if the court doesn't have jurisdiction then nothing else I say matters today anyway. And I want to be clear upfront about two points. First, we only became aware of the potential diversity-defeating participation of a D.C. resident trustee remote from the project S.P.E. or the party entity following the court's Sus Fonte order. We did investigate sort of the basis for diversity jurisdiction at the time of removal, albeit in a truncated fashion given the pendency of the court. So that was an oversight. But at the time of removal, based on our internal diligence, our discussions with the ownership groups of the entity, we had no reason to believe that there was a D.C. resident somewhere in the tree. Had we discovered that issue, obviously we either would not have removed or we would have, if we thought we had a basis to do so, we would have done so and disclosed the fact to the district court and then argued about the legal significance of it. But here we are. I'm not super impressed with the basis originally. I don't think the legal standards were correctly stated. No appreciation of the difference between a partnership or an LLC under our law and a corporation and where it's not a corporation, you know, doing the right analysis even, let alone the factual inquiry. And I'm not sure that we have the information that we need now. One of the owners of one of the owners of owners of owners that you've identified, you refer to as a D.C. resident. But the question for diversity is domicile, aka citizenship, and it looks like Station House still hasn't identified the, you know, provided the information that's needed to show whether that trustee is a D.C. domiciliary or even really identified the type of trust with enough specificity so that we know this is a kind of trust where the trustee's domiciliary matters as distinct from the beneficiary's domiciliary. And so I'm not sure what to make of that. And we gave you notice of the shortcomings. Do you know whether the trust at issue, the one where there's a trustee that's, as you say, a D.C. resident, is that one that's form pursuant to the Maryland Statutory Trust Act or was it form pursuant to the Discretionary Trust Act? Do you know that? I don't know, Your Honor. I communicated with the trustee. I have not seen the trust document, but I did communicate with the trustee, and he represented, let's say, an irrevocable grant or trust under Maryland law. Obviously, assuming that it is in the nature of a common law trust, a trust in Maryland, like in most jurisdictions, is not a juridical person, and so therefore under Americold and this court's decision in Wong, X. R. L. Wong, it appears to be a traditional trust, in which case the trustee's citizenship determines the citizenship of the trust, and we have a problem at that point. You mentioned your removal petition. Yes, Your Honor. And that's inaccurate, right? In paragraph 14, do you know which one I'm talking about? The, you're referring to the notice of removal? Station House is an entity incorporated in the state of Delaware. That's not true, is it? No, you're right, Your Honor. That's an error. It's an LLC. The removal could have been done much more, I think, professionally than it was. I was not actually involved in it. I came into the case afterward. There are a couple open questions, factual questions, and this is not in the record, but if you know, let me know. Yes, Your Honor. Number one, is he back in the apartment now? He is. He is. Is he paying rent? No, he is not. Did he get a voucher? Has he ever appealed the disallowance of his vouchers? He did, and I'm sure Mr. Satterlund, his attorney, will have more information on the status. We understand he was granted a good cause for a merits hearing on the termination of his voucher. I don't know the status of the hearing. I don't know if a decision was made. And this is in the record, I think. I remember reading it. His lease was month to month, right? That's right. That's right. And as far as you know, has Mr. Eden complied with the stipulations of the injunction as to his conduct? Not fully. We had an initial hearing on that perhaps two weeks after the injunction entered and raised to Judge Mehta below some issues that had come up with respect to compliance. Judge Mehta did not act on that. So the way we style it was a motion for an indicative ruling given the pendency of the appeal that the court would dissolve the injunction based on the violations. Judge Mehta didn't really rule one way or another on that. He declined to take action at that time, but I think indicated in the hearing that he recognized at least some violations. They were not as serious, though, as the issues that we raised in the PI papers or in the briefing here. Can I take you back to jurisdiction for a second?  So as I understand it, there's a chain of ownership leading up to a trust which has trustees or a trustee identified as a resident of the District of Columbia. Is that trustee a citizen of the District of Columbia? He's an individual. He lives here. I believe so, but I guess I can't speak with certainty to that. He's an attorney. So either he is, which might or might not be a reasonable inference from a sloppy use of the word resident, in which case diversity is destroyed, or you don't know, in which case you haven't proven diversity, notwithstanding the removal and notwithstanding our order for help with that. So, I mean, either way, I don't see how you come before us. Your Honor, I understand. I mean, it was an error in the first instance, and sloppy is probably a good word for it. I understand him to be an individual who resides in D.C. I don't have any information that he lives anywhere else, so I don't have any reason to believe he's not a citizen of D.C. Which would destroy diversity. And that was the other point I wanted to make in all candor to the Court. I mean, I searched to see whether there are any cases where, in the situation of a remote trustee or a remote member of an LLC or a remote investor in an entity, whether any cases treat that as different than the Carden rule, and I found no such cases. Thank you. So in view of that, I think, you know, we probably have no basis to continue in federal court. We'll give you a moment or two for rebuttal, but we'll now hear from Mr. Satterlund. Understood. Thank you, Your Honor. Good morning, Your Honors, and may it please the Court. So our position on jurisdiction is that we don't have enough information to have a position. Discovery, obviously, has not gone forward in this case. We're relying on what we've heard from my friend, and I'm not sure that I have anything to contribute to the discussion. Well, if we don't have enough information, then the petition for removal is invalid. That's as far as I know, Your Honor. Which leads me to question the consequence of that. If, in fact, we don't have, the district court did not, was not shown to have jurisdiction, then don't we have to vacate the injunction? Well, it has been our position throughout this litigation that, Mr. Satterlund— Then we have to vacate it, don't we? Well, I think Your Honor was asking what the effect would be of vacating the injunction, and I think as a matter of black-letter, decades-settled District of Columbia law, you don't need an injunction in order to have the legally guaranteed right to live in an apartment that you're renting until— He's not renting it anymore, according to the counsel for the station house. Well, I don't think that's a defense position. How can you be renting an apartment if you're not paying anything? Because non-payment of rent, like every other category of lease violation, is swept into D.C. law. That case has to be— We have to get into that. I'm just asking, how can it be that the injunction should stand if the district court didn't have jurisdiction to issue it? Well, I think I don't—I cannot imagine any way in which a court that does not have jurisdiction would be able to enter a binding injunction. So you'd be back where you started, which is in D.C. Superior Court, and pursue any appropriate relief there? With the one change that Mr. Eden is in possession of his apartment. That's what I'm saying. Any appropriate relief. And you don't have any objections to that, presumably? Right. Except that Bazzuto has made it clear in their reply brief that they intend to conduct another unlawful self-help eviction the second they are not bound by a federal court against doing so. So you'll be ready. You'll have TRO papers or whatever ready to go. We filed there before. A little updating should suffice. And they'll have their eviction action pending? Yes. All right. Anything else? Well— In terms of the compliance, as far as you know, there is no ongoing or no pending compliance problems with Mr. Eden and the conditions of the injunction that the district did enter, with the academic, if there's no injunction anymore. Correct, Your Honor. To address a couple of other points that Your Honors raised previously, the hearing on the merits challenging the termination of the voucher was this past Friday. That's been taken under submission. The regulations say we should get a decision on that within 14 days. I have a note on my calendar on day 15 to begin checking with them if we don't have anything from them by then. Just to be clear, under D.C. law, a month-to-month tenancy is unusually in our law not something that can be terminated by the landlord without going through the normal process. The month-to-month tenancy lasts until the tenant gives notice ending the tenancy or the landlord-tenant court issues a judgment and a writ for possession. I suppose I have some thoroughly rehearsed discussion of the merits of the case, but I leave it up to Your Honors what, if anything, I should go into. I don't think we have further questions. Thank you. Thank you, Your Honor. Mr. Dugan, do you want any rebuttal? You don't have to take it. Your Honor, just one point very briefly. I mean, it's very clear where this is headed, and I just want to be clear on the record. We have no intention of sort of taking advantage of our own mistake and doing anything to disrupt what is now the status quo. I mean, the eviction case will play out that we will file in D.C. court, and obviously, if we end up back in D.C. Superior on the wrongful eviction, we'll litigate that, but we're not going to go change the locks because the court finds that we erroneously removed. That was our mistake, so we're not going to try to take ownership of that or damage of it. Thank you for that assurance. That's very helpful. All right. The case is submitted.
judges: Pillard; Katsas; Randolph